FILED

07/14/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: OP 21-0173

# SYNOPSIS OF THE CASE

**2021 MT 178, OP 21-0173: BETH McLAUGHLIN,** Petitioner, v. **THE MONTANA STATE LEGISLATURE and THE MONTANA DEPARTMENT OF ADMINISTRATION,** Respondents.[1]

The Montana Supreme Court held unanimously today that the State Legislature exceeded the scope of its legislative functions when it issued subpoenas for the electronic records of Judicial Branch Court Administrator Beth McLaughlin. The Court ruled that the subpoenas sought information not related to a valid legislative purpose, information that is confidential by law, and information in which third parties have a constitutionally protected individual privacy interest. The subpoenas arose from the Legislature's stated concern about the practice of polling judges for what it called "prejudg[ing] legislation and issues" that may come before the courts.

In today's Opinion, the Court first rejected the Legislature's argument that the Supreme Court had no authority to rule on the case because it presented a direct conflict between the two branches of government that could be handled only through negotiation between the branches. Citing a court's "unflagging responsibility to decide cases and controversies," the Supreme Court noted that disputes over the scope of legislative subpoena power had been litigated in numerous cases and "are squarely within the authority of the courts." It referred to the U.S. Supreme Court's recent decision in *Trump v. Mazars*, in which the High Court ruled on Congressional subpoenas to the President and set forth a balance of factors that courts must consider in examining subpoenas to minimize "interbranch confrontation."

The Montana Supreme Court rejected the Legislature's argument that it needed McLaughlin's e-mails to investigate the potential for bias among judges who could be considering court challenges to legislation. First, under the Montana Constitution, the Judicial Standards Commission, not the Legislature, investigates allegations of judicial misconduct. Any concern about a judge making statements about cases that are or could come before the courts would be within the exclusive authority of the Judicial Standards Commission and the Supreme Court. Second, the U.S. Supreme Court in *Republican Party v. White* (2002) struck down as a First Amendment violation a Minnesota law prohibiting candidates for judicial election from announcing their views on disputed legal and political issues. Impartiality, the Supreme Court explained in *White*, guarantees a party that the judge who hears the case will apply the law to that party in the same way the judge applies it to any other party. A judge's views regarding the relevant legal issues in a case is not a necessary component of equal justice. The Supreme Court explained in *White* that impartiality also means open-mindedness: "This quality in a judge demands, not that he

---

[1] This synopsis has been prepared for the convenience of the reader. It constitutes no part of the Opinion of the Court and may not be cited as precedent.

have no preconceptions on legal issues, but that he be willing to consider views that oppose his preconceptions, and remain open to persuasion, when issues arise in a pending case." The Montana Supreme Court emphasized the rules of judicial conduct that encourage judges to share their "special expertise" with the Legislature on matters concerning the law, the legal system, and court administration.

The Court noted longstanding constitutional principles that a legislative body may investigate only into those areas in which it may potentially legislate; a legislature cannot inquire into matters within the exclusive province of one of the other branches of government. Because McLaughlin had not retained the e-mails from individual judges registering their votes, the Legislature sought to investigate whether members of the Judiciary or employees of the Judicial Branch had deleted public records and information in violation of state law and policy. But the Legislature is not a law enforcement agency, and addressing alleged violations of existing law is an enforcement matter that is within the power of the executive branch. The Judicial Branch's policies—which are available to the public—did not require members or employees of the branch to retain every e-mail. The Court concluded that the Legislature failed to show that compelling production of thousands of unredacted Judicial Branch messages, rather than undertaking other forms of inquiry, would advance its consideration of legislation on the matter of a judicial records retention policy. The Court thus held the subpoenas invalid to the extent they sought to determine whether Judicial Branch employees or officials violated state law or policy.

The Court also held that the Legislature had not shown a valid legislative purpose in seeking to investigate whether the Court Administrator and members of the Judicial Branch had improperly used government time and resources to lobby the Legislature. The subpoenas were issued following a court challenge to the constitutionality of Senate Bill 140, a bill abolishing the Judicial Nomination Commission that had been in place to select nominees for filling judicial vacancies in Montana. McLaughlin had facilitated a poll of district judges to determine whether the Montana Judges Association should take a position on the bill. The Association voted to oppose the measure and went on record to make the Legislature aware of its position. The Court held that these actions did not give rise to a legislative purpose for the subpoenas. First, the Legislature again was seeking to perform a law enforcement function outside the scope of legislative authority. Second, state law excludes actions of public officials acting in their governmental capacities from the definition of "lobbying." Third, under the statutory definition of "lobbyist," the Court Administrator was not lobbying when she facilitated the polling of judges because she did not have personal contact with any legislators on the subject, and the Montana Judges Association—through its registered lobbyist—publicly reported its activities on the bill.

The Supreme Court referenced both the Judicial Branch e-mail policy and the Code of Judicial Conduct, which expressly authorizes judges to use court "premises, staff, stationery, equipment, or other resources" for "incidental" activities that concern the

"law, the legal system, or the administration of justice." Because "[j]udges are uniquely qualified to engage in the extrajudicial activities that concern" such matters, the Code of Judicial Conduct expressly allows them to "share that expertise with governmental bodies and executive or legislative branch officials."

Finally, the Court held, the legislative subpoenas were far too broad. They were not limited to "public records" or "public information" but encompassed information regarding confidential personnel-related matters; confidential Youth Court matters; confidential matters before the Judicial Standards Commission; potential on-going security risks to individual judges; ongoing cases and judicial work product; and information in which third parties have protected privacy interests. Rather than following avenues established by statute for seeking information from the Court Administrator or giving her the notice and opportunity to respond that due process requires for all other subpoenas, the Legislature demanded production within a 24-hour period from a separate agency. In turn, the Department of Administration Director failed to consider the significant potential confidentiality and privacy interests when she began her blanket release of the e-mails without giving McLaughlin notice or an opportunity to review the materials and raise any such concerns or seek protection of confidential information in a court of law. These basic safeguards were ignored.

In that regard, the Court pointed out that ensuring due process of the law is a judicial function, not a legislative function. If the Legislature issues a subpoena to a government officer that may reach information that is confidential by law or involves individual privacy interests of third parties, the government officer must have a chance to review the materials first, and any issues about disclosure must be presented to a court.

This is not to say, the Court agreed, that the Court Administrator is insulated from revealing information to the legislative branch of state government. "Far from it." The Legislature has provided for alternative means by which to obtain information and to determine accountability of administrative matters in the Judicial Branch. Had the Legislature sought information through these means, it might have avoided interbranch confrontation instead of subpoenaing a broad swath of McLaughlin's records without any notice to the Judicial Branch.

The Court ordered the Legislature to return all materials provided under the previously issued subpoenas; prohibited the Legislature, its legal counsel, and the Department of Administration from disclosing or disseminating any additional information provided in response to the subpoenas; and held that the subpoenas could not be enforced or reissued.

Two members of the Court wrote additional concurring opinions. Specially concurring with the decision, Justice McKinnon would also have quashed the subpoenas to McLaughlin, but upon the grounds that the Legislature's investigation into alleged

misconduct of the Judicial Branch violated the constitutional doctrine of separation of powers. Without question, the Legislature's goal in issuing the subpoenas was to expose purported violations by judges of ethical codes, state law, and state policy. These are plainly allegations of misconduct which do not have a valid legislative purpose. Montana's Constitution specifically provides the method for addressing judicial misconduct is through the Judicial Standards Commission. The constitutional doctrine of separation of powers does not tolerate attempts to control, interfere, or intimidate one branch of government by another.

In a separate concurring opinion, Justice Sandefur noted his complete concurrence in the comprehensive analysis and holdings in the majority opinion but wrote separately to further concur in Justice McKinnon's special concurrence, as supplemental reasoning wholly consistent with the Court's main analysis and holdings. Justice Sandefur further stressed the critical importance of adherence and respect for the constitutional separation of powers and the rule of law in the face of the reckless "crisis" unscrupulously ginned-up for the purely partisan purpose of undermining the constitutional function of Montana's duly-elected non-partisan Judicial Branch—to conduct independent review of legislative enactments for compliance with the supreme law of this state, the Montana Constitution.

District Judge Donald Harris of Billings joined the Court on the case in place of Justice Jim Rice, who recused himself after filing his own lawsuit to challenge the Legislature's subpoena for his electronic records.